UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NICKOLUS G. TOEPFER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 3:20-cv-733-RLM -MGG |
| | ) |
| TREVOR HARTER, et al, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF NICKOLUS TOEPFER'S RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Pre-trial detainee Nickolus Toepfer was incarcerated in J Block at the Kosciusko County Jail.[1]  Late in the evening on July 18, 2020, two jail officers – Dan Meza and Trevor Harter – injured Toepfer during the suppression and aftermath of what jail personnel would later call a "riot."  Riot is perhaps too strong a word.  Because surveillance video shows that the inmates' defiance that evening was no more violent than high schoolers staging a walkout - although there was nowhere the inmates could walk to, so they paced about or sat at tables in the day room awaiting the eventual intervention of their guards.

Trouble began earlier that evening when jail officers found a primitive still used to make "hootch" in an inmate's cell.  As officers attempted to remove the entrepreneur from J Block, some of his mates intervened and blocked their path, demanding that they name the informant who had snitched on him.  The officers retreated to safety, temporarily conceding control of J Block to the inmates.  Eventually a team of swat officers known as

---

[1] Toepfer Affidavit, ¶¶ 3-4.

1

"SERT" entered J Block shortly before midnight to regain control. Meza and Harter were part of SERT unit that night. Meza was the third officer to enter J Block. Armed with a non-lethal shotgun, Meza fired several rounds at Toepfer who was lying on the floor in a fetal position. Toepfer sustained injuries to his head, right arm and right leg. Afterward, Toepfer was moved to the booking room to await transport to the hospital. There, Harter approached a handcuffed Toepfer and suddenly, without uttering any command, grabbed ahold of his right arm and manhandled him violently to ground, for no apparent reason other than to vent his anger for having to come back to work five hours after his shift had ended.

Toepfer alleges that the force used by Meza and Harter on those occasions was excessive under an objective standard applicable to him on account of his pretrial detainee status.

## FACTUAL BACKGROUND

Dan Meza has worked as a jail officer for the Kosciusko Sheriff's Department since January 2001.[2] J Block is one of the jail's larger sections containing fourteen cells with 2-3 inmates in each.[3] Meza was at home, off work, when he was called in approximately an hour before mid-night to participate in a SERT operation.[4] Meza learned that the inmates had been instructed two or three times to return to their cells but they refused.[5] SERT's objective was to have the inmates go back into their cells.[6]

Meza could not recall the team leader ordering the inmates back to their cells when SERT entered J Block. Meza himself gave no such command because that would have

---

[2] Meza Dep., pg. 4, line 20; Pg. 5, line 17.
[3] Pg. 5, line 25 through Pg. 6, line 11.
[4] Pg. 8, lines 6-25.
[5] Pg. 6, line 25 through Pg. 7, line 12.
[6] Pg. 9, line 23.

been the team leader's responsibility.[7]  Meza said he fired his weapon before the inmates got down on the floor but conceded the video recording would be the best evidence. He agreed that a screen shot identified as Dep. Exhibit 1 did not show that projectiles had been fired from his gun yet. In Exhibit 1, the inmate closest to the entry and who is bending over is likely Toepfer.[8]  Meza recalls firing four or five times to get the inmates to "lay down or go to their cells."[9]  He would not have fired if Toepfer had been lying on the floor because in Meza's mind there would have been "sufficient control."[10]

 A jail officer should never use force upon an inmate if it is not necessary to either gain or maintain control testified Meza.[11]

Meza's projectiles struck Mr. Toepfer in the back of his head.[12] He was injured and needed to go to the hospital.[13] Meza was trained not to shoot an inmate in the head because it could cause more "damage."[14]

Toepfer recalled that the lead officer issued the command for the inmates to get down on the floor and he immediately complied. He was on the floor in a fetal position with shot by Meza in the head.[15]

The video shows Mr. Toepfer trying immediately to get down on the floor when the lead officer enters J Block:

---

[7] Pg. 10, lines 10-20.
[8] Pg. 12, line 16 through Pg. 13, line 25.
[9] Pg. 14, lines 5-19.
[10] Pg. 14, line 20 through Pg. 15, line 2.
[11] Pg. 7, lines 13-23.
[12] Pg. 15, lines 3-7.
[13] Pg. 16, lines 5-13.
[14]  Pg. 20, lines 5-18.
[15]  Aff., ¶¶ 5 & 6.



[11:42:32 p.m.  Entry by SERT.  Lead officer's gun barrel visible.  Toepfer getting down]



[11:42:33 p.m.  Lead officer inside.  Toepfer down on the floor]



[11:42:33 p.m.  Second officer inside.  Toepfer down in a fetal position]



[11:42:35 p.m.  Meza inside.  Toepfer still down in a fetal position]



[11:42:35 p.m.  Meza shooting Toepfer when down in a fetal position]

Trevor Harter has been a jail officer for the Kosciusko Sheriff's Department since January 2020.[16]  As part of Harter's training, he has had his hands cuffed to better understand its effect on an inmate.  Harter acknowledged that he was aware that a handcuffed inmate would likely feel more vulnerable to head injury were he to lose his balance and fall. [17]

On July 18th Harter worked day shift – 6 a.m. to 6 p.m.  He had been at home for five hours when summoned back to the jail to participate in a SERT operation.  He got the

---

[16]  Harter Dep., Pg. 5, line 22.
[17]  Pg. 8, line 5 through Pg. 9, line 23.

5

call approximately 45 minutes before mid-night.[18]   He approached Mr. Toepfer who was either sitting atop or leaning against a table and without saying anything, grabbed his right arm near the elbow to "move him." He could not recall ever giving Mr. Toepfer a command.[19]

Before Harter grabbed Toepfer and pulled him off of the table, Toepfer heard Harter complaining out loud about having to leave home on account of the inmates whom he referred to as "bastards." When Harter grabbed him, Toepfer assumed his purpose was to punish him. Toepfer feared he would fall when Harter grabbed ahold of him.[20]   Toepfer sustained injuries as a consequence of Harter's actions also.[21]

The video shows Harter approaching Toepfer from behind:

 

12:46:23 a.m. Toepfer resting on table.    12:46:25 a.m. Harter grabs him.

## ARGUMENT

A.  <u>Trial Rule 56 Standard</u>:  The standard is well established.  Summary judgement is proper if there exists no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir. 1998). Facts should be construed in the light most favorable to the non-moving party.

---

[18] Pg. 16, line 14 through Pg. 18, line 7.
[19] Pg. 18, line 22 through Pg. 21, line 20.
[20] Aff., ¶¶ 7-8.
[21] Aff., ¶¶ 6 & 8.

6

*Williams v. Waste Mgmt. of Illinois*, 361 F.3d 1021, 1028 (7th Cir. 2004). The moving party bears the initial burden of proving to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)(quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). The district court should not weigh the evidence and determine the truth of the matter; rather, it should determine whether there is a genuine issue for trial. *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001).

B. <u>Excessive Force - Elements:</u>   To prevail on an excessive force claim under 42 U.S.C. §1983, a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable. *Kingsley v. Henrickson*, 135 S.Ct. 2466, 2471-2476 (2015). The determination whether the officer acted reasonably must be made from the perspective of a reasonable officer on the scene, including what the officer knew at the time,  and must account for the "legitimate interests [stemming from the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security," id, Pgs 2471-2473 (internal citations omitted). The court has provided guidance on what to consider:

> "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force."

*Kingsley*, Pg. 2473

Finally, the absence of significant injury will not defeat a claim of excessive force. *Williams v. Stauche*, 709 Fed.Appx. 830, 834-835 (7th Cir. 2017) citing *Hudson v. McMillian*, 503 U.S. 1, 4, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012).

C. <u>Plaintiff's claims are plausible</u>: Affording him the inferences to which he is entitled at this stage of the case, Toepfer has shown a plausible case of excessive force against both Meza and Harter under the objective standard of reasonableness.

When Meza entered J Block, nothing blocked his ability to observe Toepfer who attempted to get down on the floor in a compliant position. Meza would have seen this compliance but chose to fire his gun anyway. Meza used severe force at the moment when there was no need for any – at least the jury could so reasonably conclude.

Meza did not fire a warning shot. And his testimony that he aimed at the floor near the table is inconsistent with the video. Meza is seen aiming and firing his weapon seemingly in the direction of Toepfer's head, even though he was trained not to target it. Meza admits that rounds struck Toepfer in the back of the head but offers no explanation why it happened if he was aiming at the table.

Harter was in a hostile mood for having to come back to work five hours after his shift ended. Like the defendant in *Romaine v. Rowson*, 140 F.Supp. 2d 204, (N.D. NY 2001), Harter is accused of applying force for no reason than he was angry at Toepfer. Rather than instructing Toepfer to get off of the table and accompany him to the door, Harter approached him from behind, grabbed ahold of his right arm, and yanked him off of the table. It was a blatant exercise of dominance, completely unnecessary. From Toepfer's perspective, Harter was assaulting him for no legitimate reason. While Harter's

subjective motive for using force on that occasion is not now a necessary element of Toepfer's excessive force claim in light of *Kingsley*, a jury should be permitted to consider whether Harter's motive was the malicious desire to inflict of pain and not a good-faith effort to restore discipline and order.

## CONCLUSION

Construing all of the facts and inferences in Toepfer's favor at this stage, a reasonable jury could find that the Defendants' use of force was objectively unreasonable and accordingly the District Court should deny their motion for summary judgment.

Respectfully submitted,

/s/ Patrick F. O'Leary
Patrick F. O'Leary
Windsor Office Park
3000 Windsor Court, Suite A
Elkhart, Indiana 46514
574-264-6262

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify that he filed the foregoing Response using the Clerk's ECF system on the 5th day of October 2023 and at the same time a copy was served electronically upon all counsel of record, to wit:

>Lisa A. Baron
>Byron D. Knight
>KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
>233 East 84th Drive, Suite 301
>Merrillville, IN 46410
>
>Attorneys for Defendant

/s/ Patrick F. O'Leary