UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

NICKOLUS G TOEPFER,

   Plaintiff,

v.

TREVOR HARTER, et al.,

   Defendants.

Case No. 3:20-CV-733-GSL

## OPINION AND ORDER

Plaintiff was injured while in pretrial detention at Koscuisko County Jail. He filed suit against the Emergency Response Team of the Koscuisko County Jail, and Officers Morrison, Meza, and Harter alleging excessive use of force in violation of the Fourteenth Amendment. [DE 1]. Before the Court is Defendants' Motion for Summary Judgment. [DE 57]. For the reasons below, the Motion is GRANTED in part and DENIED in part.

## BACKGROUND

On July 18, 2020, pretrial detainees in the J-Block dayroom of Koscuisko County Jail were noncompliant and refused orders to return to their cells. In response, Koscuisko County Jail requested that the Emergency Response Team, a select group of jail officers, enter the J-Block dayroom, enforce compliance, and use force if necessary. Before the Emergency Response Team entered, the detainees were allegedly given commands to either get on the ground or return to their cells. [DE 1, Page 3]. The detainees did not comply, and the Emergency Response Team entered the J-Block dayroom with force. [DE 1, Page 3].

Defendant Morrison, Defendant Meza, and Defendant Harter were among the officers who entered J-Block dayroom to enforce compliance. [DE 1, Page 3]. Plaintiff alleges that

Defendant Morrison fired rubber-bullets directly at him and other detainees despite complying with orders. [DE 1, Page 3]. Plaintiff also alleges that Defendant Meza fired rubber-bullets directly at him after he was already on the ground complying with orders, causing injury to his head, neck, shoulders, and lower body. [DE 1, Page 3-4]. Finally, Plaintiff alleges that Defendant Harter used excessive force when he escorted Plaintiff out of the J-Block dayroom to the booking room and when he attempted to escort Plaintiff to the transport van, causing him further injury. [DE 1, Page 3-4].

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A court must deny a summary judgment motion when the non-moving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In reviewing a summary judgment motion, the court views the record and all reasonable inferences in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c). Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the non-moving party. *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021). Rather, the facts taken in the light most favorable to the non-moving party may come from the party moving for summary judgment, or from other sources like affidavits, video evidence, and deposition testimony. *Id.*

II.    **Excessive Force Against Pretrial Detainees**

Pretrial detainees have a right to be free from all forms of punishment while being held in pretrial detention. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). This is because they remain entitled to the presumption of innocence, and therefore, the Constitution protects them from punishment for the acts that led to their detention. *Kemp v. Fulton Cty.,* 27 F.4th 491, 495 (7th Cir. 2022) (citing *Miranda v. Cnty. of Lake*, 900 F.3d 335, 350 (7th Cir. 2018)). The Supreme Court has held that when bringing an excessive force claim, a "pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)).

In evaluating objective reasonableness, courts must look to the unique facts and circumstances of each particular case, and may appropriately consider the following factors: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.[1] *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

## DISCUSSION

Defendants filed two videos [DE 60; DE 61] that showed the incidents that occurred on July 18, 2020, and asked this Court, more than once, to adopt the videos they submitted as fact, quoting Supreme Court case law in support of their request. [DE 58, Pages 6, 7].

> The Supreme Court has recognized that if events are recorded on camera, the court is not necessarily obligated to take the non-moving party's version of the facts as true. "When opposing parties tell two different stories, one of which is

---

[1] This list is non-exhaustive. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). [DE 58, Page 7]. Defendants emphasized throughout their briefing that the "uncontroverted" video evidence both refuted Plaintiff's version of events and corroborated theirs. [DE 58, Pages 1; 5; 14].

In *Gant,* the Seventh Circuit clarified that *Scott* did not hold that courts should reject a plaintiff's account on summary judgment whenever documentary evidence, such as a video, offers some support for a governmental officer's version of events. *Gant v. Hartman*, 924 F.3d 445, 449 (7th Cir. 2019). Rather, *Scott* holds that where a trial court's determination that a fact is subject to reasonable dispute is demonstrably false, a court of appeals may reverse that determination, even on interlocutory review. *Id.* at 450 (internal citations omitted).

Video evidence showing the events in dispute can "evaporate any factual dispute that would otherwise exist." *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 480-482 (7th Cir. 2023) (citing *United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022)). Video evidence will only do so, however, where the video is "so definitive that there could be no reasonable disagreement about what the video depicts." *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 480-482 (7th Cir. 2023) (citing *Scott*, 550 U.S. at 380). The Seventh Circuit has said it rare that video evidence would leave no room for interpretation by a fact-finder. *Id.*; *e.g., Ferguson v. McDonough*, 13 F.4th 574, 581 (7th Cir. 2021) (declining to apply *Scott* where the video was open to interpretation and did not utterly discredit the plaintiff's facts); *Gupta v. Melloh*, 19 F.4th 990, 998 (7th Cir. 2021) (reversing summary judgment where reasonable jurors could have many different and opposing conclusions about the video); *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019)

(declining to draw independent factual conclusions from a poor-quality, black and white video lacking audio).

Here, the videos proffered by Defendants are helpful, but certainly not dispositive, in determining what occurred on July 18, 2020. For this reason and additional reasons below, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

## I.     Claims against the Emergency Response Team of the Koscuisko County Jail and Defendant Morrison

In Plaintiff's Response to Defendants' Motion for Summary Judgment [DE 69], Plaintiff failed to address the Defendants' arguments about both the Emergency Response Team of the Koscuisko County Jail and Defendant Morrison. In reviewing a summary judgment motion, the court views the record and all reasonable inferences in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c). However, the Seventh Circuit has consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) (citing *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 689 (7th Cir. 2000)). Because Plaintiff has failed to respond, the facts alleged by Defendants are taken to be true, and the Motion for Summary Judgment against Emergency Response Team of the Koscuisko County Jail and Defendant Morrison is GRANTED.

## II.    Claims against Defendant Meza

During his deposition, Defendant Meza agreed with Plaintiff's counsel that jail officers only use force to gain or maintain control. [DE 69-2, Page 7:13-23]. Defendant Meza also agreed that if the detainees had been lying down, he would not have fired his shotgun because that would have been "sufficient control" over the detainees. [DE 69-2, Page 14:20-25; Page 15:1-2]. Plaintiff's counsel asked Defendant Meza more than once if the detainees were lying down

before he fired his shotgun, and each time Defendant Meza answered "no." [DE 69-2, Page 10:21-25]. Defendant Meza even asserted that the video would corroborate his version of events. [DE 69-1, Page 12:16-22]. The video does not appear to do so.

The video shows that before Defendant Meza enters the dayroom Plaintiff is already on the ground in the fetal position. [DE 61, 10:42-31]. Plaintiff remains there and does not get up as additional officers, including Defendant Meza, enter. [DE 61, 10:42:31 to 10:42:36]. The video also shows a small burst of fire leaving Defendant Meza's shotgun while it is seemingly aimed at Plaintiff's head and after he is already on the ground. [DE 61, 10:42:35]. Notably, not only is Plaintiff lying down when Defendant Meza fires his shotgun, but so are all the other detainees. [DE 61, 10:42:31 to 10:42:36]. Plaintiff seems to recoil and grab his head more tightly after the burst of fire leaves Defendant Meza's gun. [DE 61, 10:42:31 to 10:42:36]. When Plaintiff is taken out of the dayroom, there is visible blood down the side of his face and neck. [DE 61, 10:43:16 to 10:43:18].

Plaintiff's counsel also asked Defendant Meza about his training, and Defendant Meza explained that it was against his training to aim his shotgun at a detainee's head because it could cause injury or unnecessary damage. [DE 69-2, Page 20:5-15]. Not only does Defendant Meza seem to aim and fire his shotgun directly at Plaintiff's head, but he also points his shotgun directly at several other detainees' heads. [DE 61, 10:44:32 to 10:45:36.] The video shows Defendant Meza standing directly over two detainees who are cuffed behind their back and lying flat on their stomach on the ground. [DE 61, 10:44:44]. Even with the detainees fully subdued on the ground, Defendant Meza aims his shotgun straight at their heads. [DE 61, 10:44:32 to 10:45:36.]

It is unclear from his testimony and the "uncontroverted" video evidence whether Defendant Meza used objectively unreasonable force when trying to gain compliance from Plaintiff. Because there remain genuine disputed issues of material fact, Defendants' Motion for Summary Judgment on the claims against Defendant Meza is DENIED.

### III.    Claims against Defendant Harter

The video here is a second video different than the first one, showing the booking room instead of the dayroom, and capturing Plaintiff's interactions with Defendant Harter. Defendant Harter's affidavit provided a more than 30-step description of how and why Plaintiff landed on the ground on his back in the booking room. [DE 59-8, Pages 2-4]. It is unclear from the video, however, even after analyzing it frame-by-frame, whether Defendant Harter's testimony aligns with the video, which would make summary judgment appropriate. Here again, it is unclear from the testimony and the video evidence whether objectively unreasonable force was used when trying to gain compliance from Plaintiff. That is a question of fact for the fact-finder. Because there remain genuine disputed issues of material fact, Defendants' Motion for Summary Judgment on the claims against Defendant Harter is DENIED.

### IV.    The "Sham" Affidavit Rule

Defendants move for Plaintiff's Affidavit [DE 69-1] to be stricken from the record on the basis that it is inadmissible because it "directly contradict[s] the Plaintiff's deposition testimony." [DE 70, Page 2]. Defendants seem to be referencing the Sham Affidavit Rule, which makes an affidavit inadmissible if it contradicts the affiant's earlier sworn testimony, unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse. *Miller v. Riverside RV, Inc.,* 455 F. Supp. 3d 813, 819 (N. D. Ind. 2020); *see, e.g.*, *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015). There is an exception for the submission of supplemental affidavits that

clarify ambiguous or confusing deposition testimony are permitted. *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) (citing *Perez v. Staples Contract & Commer. LLC*, 31 F.4th 560, 569 (7th Cir. 2022). The Seventh Circuit has emphasized that the rule is to be used with "great caution," and only applies if a change in testimony "is incredible and unexplained." *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016).

Using "great caution" as the Seventh Circuit instructs, this Court finds that the Sham Affidavit Rule does not apply here. In Plaintiff's Deposition [DE 70-1], he described relying on his own recollection to file the complaint just over a month after the incident occurred on July 18, 2020. [DE 70-1, Page 16:8-11]. This complaint contains extensive details about the incident. [DE 1]. By the time Plaintiff was deposed on January 1, 2022, nearly 18 months later, he had suffered another head injury, which grossly impacted his memory. [DE 70-1, Page 17: 12-24; Page 18:2-6]. Plaintiff's Affidavit [DE 69-1] filed on October 4, 2023, another 22 months after his deposition, includes details and allegations that are similar, and in some instances almost identical, to the ones included in Plaintiff's complaint.

The details and allegations included in paragraph 6, 7, and 8 of Plaintiff's Affidavit are included in his complaint. [DE 1; DE 69-1]. However, the details and allegations included in paragraph 5 of Plaintiff's Affidavit differ slightly from his complaint. [DE 1; DE 69-1]. In his complaint Plaintiff states that officers did not give verbal commands upon entry into the dayroom. [DE 1]. In Plaintiff's Affidavit, however, he states that upon hearing the lead officer's command to get on the floor he complied. [DE 69-1]. During Defendant Meza's deposition on August 31, 2023, he was asked several times if commands were given upon entry to the dayroom, and he too failed to recall. The videos provided by Defendant are not helpful here,

because they do not have audio. For all of these reasons, Defendant's request to strike Plaintiff's Affidavit is DENIED.

## V. The Doctrine of Qualified Immunity

The factual disputes above are material and critical to the question of qualified immunity. *Flowers v. Renfro*, 46 F.4th 631, 636 (7th Cir. 2022). Qualified immunity under § 1983 extends to officers unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. *Id.* Whether an officer violated a suspect's rights depends entirely on the reasonableness of the use of force. *Id.* This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Flowers v. Renfro*, 46 F.4th 631, 636 (7th Cir. 2022) (citing *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (internal citation omitted). Here, where there exist genuine issues of material fact, summary judgment on the issue of qualified immunity would be inappropriate. As a result, Defendants' Motion for Summary Judgment on the issue of qualified immunity is DENIED.

## VI. Local Rule 56-1

Local Rule 56-1 requires the party seeking summary judgment to include a "Statement of Material Facts" with their motion and requires the party opposing summary judgment to file a response brief with section identifying the material facts which are genuinely disputed and which make a trial necessary. N.D. Ind. L.R. 56-1(a), 56-1(b)(1)(B), 56-1(b)(2). The Seventh Circuit has repeatedly held that a district court is well within its discretion to enforce compliance with its local rules regarding summary-judgment motions. *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.,* 423 F.3d 627, 633 (7th Cir. 2005). Failure to respond to an opposing party's statement of material facts, as required by Rule 56-1, may result in the Court accepting as true all

properly supported facts presented in the moving party's statement of material facts. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359-60 (7th Cir. 2009) (district court has discretion to enforce local rules regarding summary judgment).

Here, Plaintiff failed to fully comply with Rule 56-1. Plaintiff, within his Response to Defendants' Motion for Summary Judgment [DE 69], includes a "Factual Background" section, which contains individual facts supported by citations to the record. [DE 69, Page 2-6]. Plaintiff's submission, however, failed to include a section identifying the material facts which are genuinely disputed and which make a trial necessary. N.D. Ind. L.R. 56-1(b).

This Court has reviewed Defendants' Statement of Material Facts [DE 59] and finds that it is adequately supported with citations to admissible evidence, which, given Plaintiff's failure to adhere to Rule 56-1, would allow this Court to adopt Defendants' Statement of Material Facts [DE 59] as true. However, the videos submitted by Defendants contradict parts of their Statement of Material Facts [DE 59]. Furthermore, some of their factual submission is argumentative. [DE 59, Pages 9:64-66; 12:92; 13: 94-95; 15: 111]. For these reasons, the Court declines to adopt Defendants' Statement of Material Facts [DE 59] as true. The Court reminds Plaintiff of his ongoing duty to apprise himself of and follow the local rules of this jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment on the claims against Emergency Response Team of the Koscuisko County Jail and Defendant Morrison is GRANTED, and Defendants' Motion for Summary Judgment on the claims against Defendant Meza and Defendant Harter is DENIED.

SO ORDERED.

ENTERED: June 11, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court
